1825

Mass
vs
Rogers

182.    That sale was wholly void on account of the fraud. 1 Com. Cont. 37; and *Hodgson vs. Richardson*, 1 *W. Blk. Rep.* 465, per *Yates*, J.

*Moale*, for the Appellee.    As between the original par-ties to the contract, if it was fraudulent, there would be no question as to its being void.    But that is not this case. Here the appellant parted with his property voluntarily. Until fraud was proved, *Wilson* had complete property in the horse.    This is not the case of a horse stolen from the appellant, which would not divest the property, but it is a sale with his consent.    The appellee had no notice of the fraud, and is a *bona fide* purchaser for a valuable conside-ration.    He cited and relied on *Parker vs. Patrick*, 5 *T. R.* 175.    *Doe vs. Martyr*, 4 *Bos. & Pull.* 332.    *Jackson vs. Henry*, 10 *Johns. Rep.* 185; and *Fletcher vs. Peck*, 6 *Cranch*, 133.

JUDGMENT AFFIRMED.

---

JUNE.

*M was duly bound an appren-tice to J M, and others, in the city of Baltimore: He afterwards applied to the court of Oyer and Termi-ner, &c for Balti-more county, with the consent of J M, and others, to be released from his indentures, where he was released; and with his own consent, and the consent of J R, that court pass this order—"It is adjudged and or-dered, that M, be and he is hereby bound to J R, until he is 21 years of age, to learn the trade of," &c. In an action of cove-nant by M against J R, for a breach of this order—Held, that M was not en-titled to recover*

### MASS vs ROGERS.

APPEAL from *Baltimore* county court.    This was an ac-tion of covenant, on an indenture of apprenticeship enter-ed into by the defendant below, (now appellee,) the then master, in favour of the plaintiff, (the appellant,) as an ap-prentice.    The declaration states, "that whereas by a cer-tain indenture made on the *thirteenth* day of July, eighteen hundred and ten, at the county aforesaid, between the said *Mass*, by the name of *Thomas Jackson Mass*, by his mother, *Ann Mass*, of the one part, and *James Mosher*, *Robert Carey Long* and *William Gwynn*, of the other part, the counterpart of the said indenture sealed with the seals of the said *James*, *William* and *Robert*, the said *Mass* brings here into court, the date whereof is the day and year aforesaid, it was witnessed, that the said *Mass*, at his own free and voluntary will, and with the consent of his mother, placed and bound himself apprentice to the said *James*, *Robert* and *William*, to learn the art and mystery of spinning wool, and weaving and dressing woollen cloth, as by the said indenture, relation being thereto had, will more fully appear; and the said *Mass* further saith, that in virtue of a judgment and order of the court of oyer and

terminer and gaol delivery for *Baltimore* county, duly made and passed at the January term of the said court, in the year eighteen hundred and fifteen, as by the records of said court, reference being thereto had, will more fully appear, the said *Mass* was, according to the act of assembly in such case made and provided, released from his said indenture with the consent of the said *James, Robert* and *William*, and by the said court the said *Mass*, who would be fifteen years of age on the thirteenth day of April, eighteen hundred and fifteen, was bound to the said *Rogers*, by and with the consent of the said *Rogers*, until the said *Mass* should attain the age of twenty-one years, to learn the trade of a saddler and harness maker, the said *Rogers* to teach him, the said *Mass*, the said trade, and to find him in sufficient meat, drink, apparel and necessaries suitable for an apprentice, and twelve months night schooling. And the said *Mass* in fact saith, that the said *Rogers*, in pursuance of the judgment and order aforesaid, and of his consent aforesaid, to the conditions and terms aforesaid, did receive the said *Mass* into his service as such apprentice, on the terms and conditions in the said judgment and order aforesaid; and the said *Mass* avers, that by virtue of the said judgment and order aforesaid, and the consent of the said *Rogers*, he did enter and was received by the said *Rogers* into his service as such his apprentice, in form aforesaid, and into the house of the said *Rogers*, and did stay and continue in the service of the said *Rogers* until he attained to the age of twenty-one years, to wit, until the fourteenth day of April, eighteen hundred and twenty-one. And the said *Mass* further saith, that although he, the said *Mass*, always from the time of rendering the judgment and order as aforesaid, until the fourteenth day of April, eighteen hundred and twenty-one, as aforesaid, well and faithfully did, performed and fulfilled, every thing in the said judgment and order contained, on his part and behalf to be performed and fulfilled, yet that the said *Rogers*, during all or any part of the said term of service of the said *Mass* as aforementioned, did not teach or instruct, or cause to be well and sufficiently taught and instructed, the said *Mass* in the said trade of a saddler and harness maker, after the best way and manner that he could, according to the form and effect of the said judgment and order as aforesaid, but therein wholly failed and made default,

contrary to the provisions, conditions, and effect of the said judgment and order as aforesaid, and of the covenant of the said *Rogers* so made in that behalf as aforesaid. And the said *Mass* further saith, that the said *Rogers* did not, during the said term of service of the said *Mass* as aforementioned, find him the said *Mass* twelve months night schooling, but refused so to do, contrary to the provisions, conditions and effects of the said judgment and order as aforesaid, and his said covenant so made in that behalf as aforesaid; and so the said *Mass* saith that the said *Rogers* (although often thereto requested) hath not kept with the said *Mass* his covenants in manner aforesaid made, but hath broken the same, and to keep the same with the said *Mass* hath hitherto wholly refused, to the damage of the said *Mass*, in the sum of five hundred dollars current money, and therefore he brings his suit," &c.

The judgment and order of the court of oyer and terminer of *Baltimore* county, mentioned and referred to in the declaration, was exhibited, and it states that at a court of oyer and terminer, &c. for *Baltimore* county, in January 1815, the following petition was presented to that court, "To the honourable the justices of the court of oyer and terminer and gaol delivery for *Baltimore* county. The petition of *Thomas Jackson Mass*, by *Ann Mass*, his mother and next friend, humbly showeth, that your petitioner was heretofore, on the thirtieth day of July 1810, bound apprentice to *James Mosher*, *Robert Carey Long* and *William Gwynn*, to learn the art and mystery of spinning wool and weaving and dressing woollen cloth, as by a copy of his indenture will appear. Your petitioner states, that the said *Mosher*, *Long* and *Gwynn*, have declined carrying on the said trade, or mystery; and your petitioner, from experience, finds the said trade unsuited to his genius and injurious to his health; he therefore prays that he may be released from the said indentures, and bound to another person to learn a different and more suitable trade, and he will pray.

Thomas J. Mass., by Ann Mass."

*Mosher*, *Long* and *Gwynn*, by a writing under their hands and seals, consented to release, and did release *Mass* from all claims as their apprentice; and the following instrument of writing was then exhibited to the court: "I agree and consent that *Thomas Jackson Mass*, who will

be fifteen years of age on the thirteenth day of April next, shall be bound to me until he attains to the age of twenty-one years, to learn the trade of a saddler and harness maker, and I bind myself to teach him the said trade, and to find him in sufficient meat, drink, apparel and necessaries, suitable for an apprentice, and twelve months night school-ing. *John Rogers.*"

Whereupon it was ordered and adjudged by the court, that the said *Thomas Jackson Mass* be, and he is hereby dis-charged from his indentures to the aforesaid *James Mosher, Robert C. Long* and *William Gwynn*. It is also further ordered and adjudged by the court, that the said *Thomas Jackson Mass*, be and he is hereby bound to *John Rogers* until he attains to the age of twenty-one years, to learn the trade of a saddler and harness maker, and the said *John Rogers* to teach him the said trade, and to find him in sufficient meat, drink, apparel and necessaries, suitable for an apprentice, and twelve months night schooling, &c.

The defendant craved oyer of the indenture, and it was exhibited in the following words: "This indenture witnes-seth, that *Jacob Mass* hath bound his son *Thomas Jackson Mass*, aged ten years the thirtieth day of April last past, as apprentice to *James Mosher, Robert Carey Long* and *Wil-liam Gwynn*, to learn the art or trade of spinning, weaving and dressing woollen cloth, and to serve the said *James Mosher, Robert Carey Long* and *William Gwynn*, and the survivors and survivor of them, until the said *Thomas Jack-son* shall attain to the age of twenty-one years; and the said *Jacob Mass* and *Thomas Jackson Mass* do severally promise and agree to and with the said *James Mosher, Ro-bert Carey Long* and *William Gwynn*, that he, the said *Thomas Jackson Mass*, shall during the said term of his apprenticeship, faithfully and obediently serve his said masters in all things, doing his duty as a faithful appren-tice. And the said *James Mosher, Robert Carey Long* and *William Gwynn*, do promise, covenant and agree, to and with the said *Jacob Mass* and *Thomas Jackson Mass*, that they will use their best endeavours, during the time the said *Thomas Jackson Mass* shall continue in their service, to teach him, or cause him to be taught, the said art or trade of spinning, weaving and dressing wool and woollen cloth, and to read and write, and also that they will provide and furnish for him, meat, drink, clothing and other necessa-

ries suitable for an apprentice, and at the expiration of his apprenticeship customary freedom dues. In witness whereof the parties have hereto set their hands and seals this thirtieth day of July, eighteen hundred and ten." Signed and sealed by *Jacob* and *Thomas J. Mass,* and by *Mosher,* *Long,* and *Gwynn,* in the presence of, and acknowledged before, a justice of the peace for *Baltimore* county.

The defendant then demurred generally to the declaration, which demurrer the county court ruled good; and the plaintiff appealed to this court.

The case was argued before Buchanan, Ch. J. Earle, Stephen, and Dorsey, J.

*Mitchell,* for the Appellant, to show that the proceedings of the court of oyer and terminer were legally obligatory on the defendant—that that court had jurisdiction of the subject matter, and that their proceedings were in due form, referred to the acts of 1799, *ch.* 58, *s.* 9, 12; 1793, *ch.* 45, *s.* 7, and *ch.* 57, *s.* 17. *Allen vs. Dundas,* 3 *T. R.* 125. *Morrell vs. Dickey,* 1 *Johns. Chan. Rep.* 156; and 1 *Chitty's Plead.* 405. And to show that an action of covenant could be maintained in this case, he cited 1 *Chitty's Plead.* 111, 112, 113. 3 *Com. Dig.* tit. *Debt,* (B.) 367. Ibid tit. *Covenant,* (A 1,) 256. *Co. Litt.* 231. a. *Bret vs. Cumberland,* Cro. Jac. 399, 521; and *Ascue vs. Hollingsworth,* Cro. Eliz. 355, 494, 544.

*Glenn,* for the Appellee, contended, 1. That an action of covenant could not be sustained on a record. He cited 1 *Chitty's Plead.* 109, 113, 114; and *Hollingsworth vs. Ascue,* Cro. Eliz. 355. That if the action could be maintained, the court, in which the record was made, must have jurisdiction of the subject; and that here the court of oyer and terminer had no jurisdiction, and being a court of limited jurisdiction, the special jurisdiction must appear on the face of the record. He cited *Bristow vs. Wright,* 2 Doug. 667, 668. *Shrivers vs. Wilson,* 5 Harr. & Johns. 130. The *King vs. Gately,* 2 Salk. 471. pl. 4. 5 Mod. 139, S. C. 3 Vin. Ab. 26. 4 Bac. Ab. 557, 577. Acts of Assembly 1793, ch. 45, s. 2, 4, 6, 7; 1791, ch. 21, s. 2; 1794, ch. 47, and 1799, ch. 44, s. 3. He insisted also upon the variance between the indenture declared upon, and that of which oyer was given. JUDGMENT AFFIRMED.